IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CONSTANCE ARTHUR-NELSON,

        Appellant,

v.                      //   CIVIL ACTION NO.   1:19CV167
                           C/W             1:19CV168
                                         1:19CV169
                           BANKRUPTCY NO.   1:17BK057
                               (Judge Keeley)

UNITED STATES BANCORP GOVERNMENT
LEASING AND FINANCE INC., *as
Trustee for the Benefit of
COMM 2013-CCRE12 Mortgage Trust
Commercial Mortgage Pass-through
Certificates*; and WELLS FARGO
COMMERCIAL MORTGAGE SERVICING,

        Appellees,

TARA RETAIL GROUP, LLC,

        Debtor.

---

THE ELSWICK COMPANY, LLC,

        Appellant,

v.

UNITED STATES BANCORP GOVERNMENT
LEASING AND FINANCE INC., *as
Trustee for the Benefit of
COMM 2013-CCRE12 Mortgage Trust
Commercial Mortgage Pass-through
Certificates*; and WELLS FARGO
COMMERCIAL MORTGAGE SERVICING,

        Appellees,

TARA RETAIL GROUP, LLC,

        Debtor.

GEORGE LEESON and
JACOB CRUM,

         **Appellants,**

**v.**

UNITED STATES BANCORP GOVERNMENT
LEASING AND FINANCE INC., *as
Trustee for the Benefit of
COMM 2013-CCRE12 Mortgage Trust
Commercial Mortgage Pass-through
Certificates*; and WELLS FARGO
COMMERCIAL MORTGAGE SERVICING,

         **Appellees,**

TARA RETAIL GROUP, LLC,

         **Debtor.**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

The Plaintiffs-Appellants, Constance Arthur-Nelson, the
Elswick Company, LLC d/b/a Anytime Fitness Elkview ("Elswick"),
George Leeson and Jacob Crum (collectively, "the Plaintiffs"),
appeal from an August 15, 2019 Memorandum Opinion and three orders
of the United States Bankruptcy Court for the Northern District of
West Virginia ("Bankruptcy Court") dismissing their adversary
proceedings with prejudice.[1] For the reasons that follow, the Court
**AFFIRMS** the Bankruptcy Court's conclusion that the Plaintiffs'
complaints fail to state a claim for which relief may be granted.

---

[1] Unless otherwise indicated, all citations throughout this
Memorandum Opinion and Order are to Case No. 1:19cv167.

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.  1:19CV167
              C/W 1:19CV168
                 1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

**I. BACKGROUND**[2]

This matter arises out of the failure of a culvert that served as a bridge—and the only access point—to the Crossings Mall ("the Mall") in Elkview, West Virginia. The Mall is a multi-tenant commercial property with various retail and food-service establishments. The culvert collapsed during flooding in June 2016.

Three years prior to the culvert's collapse, UBS Real Estate Securities, Inc. ("UBS") lent $13,650,000.00 to Tara Retail Group, LLC ("Tara") to purchase the Mall property. Tara executed a Deed of Trust and an Assignment of Leases and Rents (the "ALR") to secure repayment of this debt. UBS subsequently assigned the loan agreement, Deed of Trust, the ALR, and other associated documents to Defendant U.S. Bancorp Government Leasing and Finance Inc. ("U.S. Bank"). Defendant Wells Fargo Commercial Mortgage Servicing ("Wells Fargo") services the loan and administers various escrow accounts, including one for Capital Expenditures, which the Loan Agreement defines as "the amounts expended for items required to be capitalized under GAAP (including expenditures for replacements,

---

[2] The facts are drawn from the parties' briefs and the designated record on appeal. The parties do not dispute the factual and procedural history relevant to the pending appeal.

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.    1:19CV167
C/W 1:19CV168
1:19CV169

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

building improvements, major repairs, alterations, tenant improvements and leasing commissions.)" (Dkt. No. 4-13 at 3).

In January 2016, Gold Coast Partners LLC, an affiliate of Tara, contacted Wells Fargo and requested $24,000 to repair the culvert and a "dirt cliff" behind a tenant's store at the Mall. The record is silent as to whether Wells Fargo denied this request, but it is undisputed that the culvert had not been repaired prior to its collapse. The culvert was not replaced until 2017 (Dkt. No. 4-5 at 15).

A.   The Allegations in the Complaints

The plaintiff, Arthur-Nelson, is a "customer, invitee[,] and licensee" of the Mall's tenants and owns land near the Mall (Dkt. No. 4-5 at 15-16). Her amended complaint alleges the following five counts: 1) breach of a duty under the loan documents, including the servicing standard; 2) breach of fiduciary duty; 3) breach of a duty of care under In re Flood; 4) breach of the general duty of care; and 5) a claim for punitive damages. Id. Arthur-Nelson also seeks to be designated as a class representative for those similarly situated. Id. at 20.

The plaintiff, Elswick, is a limited liability company doing business as Anytime Fitness Elkview and leases premises at the Mall

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**    **1:19CV167**
**C/W  1:19CV168**
**1:19CV169**

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

(Case No. 1:19cv168, Dkt. No. 5-5 at 1, 23). Its second amended complaint alleges the following six counts: 1) breach of contract under the loan documents; 2) breach of a duty under the loan documents; 3) breach of fiduciary duty; 4) tortious interference with a business relationship; 5) breach of the general duty of care; and 6) a claim for punitive damages. Id. Elswick also seeks to be designated as class representative for similarly situated businesses. Id. at 25.

The plaintiff, Leeson, owns land near the Mall and alleges that his home was damaged due to flooding (Case No. 1:19cv169, Dkt. No. 5-5 at 6, 25). The plaintiff, Crum, was a customer of the Mall who was stranded overnight when the culvert collapsed. Id. at 23. Leeson and Crum's second amended complaint alleges four counts: 1) breach of the general duty of care as to Leeson and Crum; 2) breach of the duty of care under In re Flood; 3) breach of a duty to customers and invitees on the shopping center premises under the ALR; and 4) a claim for punitive damages. Id. Both Leeson and Crum seek to be designated as class representatives for similarly situated persons. Id. at 28.

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                                 C/W  1:19CV168
                                                      1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

**B.  Operative Language from Documents Securing the Mall Property**

The Mall property is secured as part of a large transaction known as the Comm 2013-CCRE 12 pass through mortgage (Dkt. No. 4-5 at 1-2). The basis for the Plaintiffs' claims against the Defendants is their assertion that the language in several documents related to the security granted in the Mall property establishes duties owed by Defendants to the Plaintiffs. Id. at 2. The relevant documents (collectively, the "Loan Documents") include:

- Loan Agreement between UBS and Tara;

- Deed of Trust between UBS, Tara, and a trustee;

- Assignment of Leases and Rents ("ALR") between Tara and UBS;

- Pooling and Servicing Agreement between Deutsche Mortgage and Asset Receiving Corporation; Wells Fargo; LNR Partners, LLC; U.S. Bank; and Park Bridge Lender Services LLC;

- Assignment of Management Agreement and Subordination of Management Fees between UBS and Plaza Management, LLC[3]; and

- Cash Management Agreement between UBS, Tara, Wells Fargo, and Plaza Management, LLC.

Id.

---

[3] Plaza Management, LLC was Tara's manager at one point (Dkt. No. 24 at 19).

6

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.           1:19CV167
                                                 C/W  1:19CV168
                                                      1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

UBS's Loan Agreement with Tara states, in pertinent part, that "[t]he Cash Management Account shall be under the sole dominion and control of Lender. Lender and Servicer shall have the sole right to make withdrawals from the Cash Management Account. All costs and expenses for establishing and maintaining the Cash Management Account shall be paid by Borrower." Id. at 7.

The Deed of Trust, in pertinent part, states:

> Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer, convey and grant with POWER OF SALE, a security interest to Trustee for benefit of lender, its successors and assigns, the following property rights, interests and estates and estates now owned or hereafter acquired by a Borrower (collectively, the "property"). . . All leases and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into . . . and all right, title and interest of Borrower, its successors and assigns therein and there under, including, without limitation[,] any Lease guaranties, letters of credit, cash or securities deposited thereunder to secure the performance by the leasees [sic] of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the land and the improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively[,] the "rents") and all proceeds form the sale or other disposition of the Leases and the right to receive and apply the rents to the payment of the Debt

Id. at 6.

7

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**      **1:19CV167**
     **C/W  1:19CV168**
     **1:19CV169**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

The Pooling and Servicing Agreement provides that Wells Fargo is the Master Servicer and sets out the relevant standard of care for servicing and administering the pooled loans as follows:

> [T]o diligently service and administer the Loans **in the best interests of [and] for the benefit of all Certificate Holders** . . . in accordance with applicable law, the terms of the Pooling Agreement, the applicable Loan Documents . . . [and in] the same manner in which, and with the same care, skill, prudence and diligence with which the Master Servicer or the Special Servicer . . . services and administers similar mortgage loans for other third-party portfolios.

Id. at 10 (emphasis added).

The Assignment of Rents and Leases ("ALR") states:

> It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1 and the Cash Management Agreement, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents, as well as other sums due under the Lease Guaranties. Borrower shall hold the Rents, as well as all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

Id. at 11.

Tara further granted an irrevocable power of attorney to U.S. Bank "to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by

8

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

Lender for the proper management and preservation of the Property."

Id.

According to the Lease Agreement between Tara and Elswick, "Landlord shall keep the structural portions of the premises and the Shopping Center, as applicable, in reasonable repair, provided that Tenant shall give Landlord written notice of the necessity of such repair as the same affects the premises." Id. at 38.

The Lease defines "Common Areas" as:

> [T]hose areas including among other facilities, the parking areas, sidewalks, landscaping, curbs, lighting facilities, canopies, utilities, equipment, improvements, installations and other areas in the Shopping Center which are from time to time designated by Landlord for the nonexclusive use or benefit of Landlord and tenants of the Shopping Center, their employees, agents, customers, licensees, and invitees.

Id. at 35.

The Assignment of Management Agreement and Subrogation of Management Fees made UBS (later, U.S. Bank, via assignment) the assignee and subrogee of the management fees. Id. at 12. The Cash Management Agreement provided that Wells Fargo would maintain accounts for specific expenditures, including taxes, insurance, operating expenses. Id. at 12-13. The Cash Management Agreement provided as follows:

> Borrower and Manager acknowledge and agree that the Cash Management Account and all Subaccounts are subject to the

9

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.       1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

> sole dominion, control and discretion of Lender, its
> authorized agents or designees, including Cash Management
> Bank, subject to the terms hereof. Neither Borrower nor
> Manager shall have the right of withdrawal with respect
> to the Cash Management Account. . . . Beyond the exercise
> of reasonable care in the custody thereof or as otherwise
> expressly provided herein, neither Cash Management Bank
> nor Lender shall have any duty as to any Collateral in
> its possession or control as agent therefor or bailee
> thereof or any income thereon or the preservation of
> rights against any Person or otherwise with respect
> thereto. Cash Management Bank and Lender each shall be
> deemed to have exercised reasonable care in the custody
> and preservation of the Collateral in its possession if
> the Collateral is accorded treatment substantially equal
> to that which Cash Management Bank or Lender accords its
> own property, it being understood that Lender shall not
> be liable or responsible for any loss or damage to any of
> the Collateral, or for any diminution in value thereof by
> reason of the act or omission of Cash Management Bank or
> Lender, its affiliates, agents, employees or bailees,
> except to the extent that such loss or damage results
> from Cash Management Bank's or Lender's gross negligence
> or willful misconduct, provided that nothing in this
> Article 5 shall be deemed to relieve Cash Management Bank
> from the duties and standard of care which, as a
> commercial bank, it generally owes to depositors.

Id. at 13-14.

The Cash Management Agreement also appointed UBS (later, U.S.

Bank) as Tara's attorney-in-fact

> [to] exercise and enforce every right, power, remedy,
> option and privilege of Borrower with respect to the
> Collateral . . . which Borrower could or might due or
> which Lender or Cash Management Bank (as agent of Lender)
> may deem necessary or desirable to more fully vest in
> Lender and Cash Management Bank (as agent of Lender), the
> rights and remedies provided for herein and to accomplish
> the purposes of this Agreement.

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                                  C/W  1:19CV168
                                                       1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

Id. at 14-15.

C.    **Related Litigation**

     In a related case, the United States District Court for the Southern District of West Virginia (the "district court") recently dismissed a complaint similar to the complaints under review here. See Nidy v. US Bancorp Government Leasing and Finance, Inc. et al., Civil Action No. 2:18-cv-01061, 2019 WL 2537418 (S.D. W. Va. June 19, 2019) (Copenhaver, J.). In that case, Dianna Nidy, a former employee of the K-Mart store located at the Mall, filed a complaint against U.S. Bank and Wells Fargo after she lost her employment when the Mall closed following the collapse of the culvert. Id. at 3.

     The only claims in the instant complaints that differ from those alleged in Nidy are the In re Flood-related allegations in Arthur-Nelson's and Leeson's complaints, the breach of contract claim in Elswick's complaint, and the allegation in Leeson and Crum's complaint that the Defendants breached a duty to customers and invitees.  Even though the Plaintiffs here had different reasons for bringing their claims, all the claims encompass essentially the same arguments regarding a duty of care raised in Nidy.  Recognizing these similarities, the Bankruptcy Court relied

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                    1:19CV169

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

heavily on the analysis of the district court in <u>Nidy</u> in reaching
its decision.

**D.  Procedural Background**

After Chief Judge Thomas E. Johnston of the United States
District Court for the Southern District of West Virginia referred
the Plaintiffs' consolidated adversary proceedings to the
Bankruptcy Court in this District based on the pendency of Tara's
bankruptcy case here, the Bankruptcy Court heard argument on the
Defendants' motion to dismiss the Plaintiffs' complaints (Dkt. No.
4-25 at 13). It also ordered supplemental briefing on the issue of
whether the Defendants could limit their duties and obligations as
assignees of a complete and total assignment of leases and rents
(Dkt. No. 4-9). Thereafter, on August 15, 2019, the Bankruptcy
Court dismissed these consolidated cases with prejudice because
Counts I, II, and IV of Leeson and Arthur-Nelson's complaints
failed to state viable claims, and the Defendants were insulated
from liability under <u>In re Flood</u> (Dkt. No. 4-13 at 6, 7).

The Bankruptcy Court also determined that, because Tara's
assignment of its interests in the subject leases had not made the
Defendants a party to Elswick's lease, Elswick's complaint should
be dismissed in light of the "sole benefit" requirement codified in
W. Va. Code § 55-8-12. <u>Id.</u> at 8. Finally, relying on the reasoning

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                               C/W  1:19CV168
                                                     1:19CV169

## MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

of the district court in Nidy, it dismissed Leeson and Crum's complaint, finding its allegations to be nearly identical to those dismissed in Nidy. Id.

After the Plaintiffs appealed from the Bankruptcy Court's ruling (Dkt. No. 4-15; Case No. 1:19cv168, Dkt. No. 5-15; Case No. 1:19cv169, Dkt. No. 5-15), the Court consolidated these cases and set a briefing schedule (Dkt. No. 8). The matter is now ripe for review.

## II. JURISDICTION

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges." To be "final," an order must "resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights" of a party to the bankruptcy case. In re Looney, 823 F.2d 788, 790 (4th Cir. 1987).

## III. STANDARD OF REVIEW

A district court sitting in its capacity as a bankruptcy appellate court reviews "findings of fact only for clear error, but consider[s] the relevant legal questions de novo." In re Varat Enters., Inc., 81 F.3d 1310, 1314 (4th Cir. 1996). Therefore, when the parties do not dispute the relevant facts, the Court's review is de novo. See In re Jones, 591 F.3d 308, 310 (4th Cir. 2010).

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**          **1:19CV167**
                                              **C/W  1:19CV168**
                                                    **1:19CV169**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

Under Fed. R. Civ. P. 12(b)(6), a party may seek dismissal of a complaint when the complaint fails "to state a claim upon which relief can be granted." When evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the non-movant, accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. 5B Fed. Pract. & Proc. Civil § 1357 (3d ed. Apr. 2020 Update). After this evaluation, the claim for relief must be "'plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A motion to dismiss tests the sufficiency of a complaint, and [the court's] evaluation is thus generally limited to a review of the allegations of the complaint itself." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). "However, [the court] also consider[s] documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." Goines v. Valley Cmt. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.              1:19CV167
                                                    C/W  1:19CV168
                                                         1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

## IV. DISCUSSION

**A.   The Bankruptcy Court Correctly Dismissed the Plaintiffs' Tort Claims.**

The Bankruptcy Court determined that, in order to adequately plead their tort claims, the Plaintiffs were required to plead the existence of a legally viable duty (Dkt. No. 4-13 at 6-8). But they were not parties to or third-party beneficiaries of the ALR or the Pooling and Servicing Agreement at issue, so they could not plead legally viable duties. The Bankruptcy Court also concluded that the ALR expressly provided that the Defendants had not assumed the duty on which the Plaintiffs based their claims, nor had the Plaintiffs and the Defendants shared any special relationship sufficient to create such a duty. The Court will address each of these issues in turn.

### 1.   Breach of Duty of Care Under Loan Documents

Elswick and Arthur-Nelson each contend that the Defendants breached a duty of care established under the loan documents, specifically, "a breach of the covenant to maintain and preserve the property under the lease agreement, the Standard of Care in the Pooling and Servicing Agreement . . . and other provisions of the loan documentation." (Dkt. No. 4-5 at 16; Case No. 1:19cv168, Dkt. No. 5-5 at 20).

15

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.                1:19CV167
C/W  1:19CV168
1:19CV169

<u>MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT</u>

The Plaintiffs argue that the standard of care language in the Pooling and Servicing Agreement[4] establishes the Defendants' duty to use reasonable care (Dkt. No. 19 at 16-17). They further contend that U.S. Bank knew the property was in a flood plain, that there was only one access point to the Mall, and that, in the absence of repairs, the access point would collapse. <u>Id.</u> at 18.

The Defendants deny any obligation under the Loan Documents to repair or maintain the culvert (Dkt. No. 24 at 26). They rely on language in section 4.1 of the ALR, which states that the assignment

> shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender . . . nor shall it operate to make Lender responsible or liable . . . for any negligence in the management, upkeep, repair, or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

<u>Id.</u> at 27.

The Plaintiffs respond that this limitation on liability is exculpatory and thus unenforceable (Dkt. No. 26 at 4). They cite

---

[4] The standard of care in the Pooling and Servicing Agreement specifies that the Servicer would "service[] and administer[] the loan with the same care, skill, prudence and diligence with which [it] services similar mortgage loans for other third-party portfolios . . . [for] the best interests of the Trust and Certificate holders" under the loan documents (Dkt. No. 19 at 17).

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**          **1:19CV167**
                                                **C/W  1:19CV168**
                                                      **1:19CV169**

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

Syllabus Point 2 of <u>Murphy v. North Am. River Runners</u>, 186 W. Va. 310, 412 S.E.2d 504 (1991), for the proposition that

> [a] general clause in a pre-injury exculpatory agreement or anticipatory release purporting to exempt a defendant from all liability for any future loss or damage will not be construed to include the loss or damage resulting from the defendant's intentional or reckless misconduct or gross negligence, unless the circumstances clearly indicate that such was the plaintiff's intention.

The holding in <u>North Am. River Runners</u> is inapposite. Here, the relevant language in the ALR does not limit liability between the Plaintiffs and the Defendants but instead confirms that the Defendants are not responsible for carrying out the terms of the lease or for controlling, caring for, managing, or repairing the property. Moreover, the Pooling and Loan Servicing Agreement describes a duty to administer the loan prudently for the benefit of Certificateholders, not to act with reasonable care regarding unnamed third parties. Thus, Defendants owed no duty of care to Elswick or Arthur-Nelson under the loan documents.

**2.  Breach of Fiduciary Duty**

Arthur-Nelson and Elswick also contend that the Defendants "assumed a fiduciary duty" to them "through the structure of the financing transaction, including but not limited to the collection of rents . . . to maintain reasonably functional commercial

17

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.      1:19CV167
                                           C/W  1:19CV168
                                               1:19CV169

## MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

premises." (Dkt. No. 4-5 at 17, Case No. 1:19cv168, Dkt. No. 5-5 at 31).

In West Virginia, "[t]he fiduciary duty is a duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law." Elmore v. State Farm Mut. Auto Ins. Co., 202 W. Va. 430, 435, 504 S.E.2d 893, 898 (1998) (internal citations and quotations omitted). In other words "a fiduciary duty is considered uncommon and 'extraordinarily strict,' and is to be imposed only upon one who has agreed to support another's interests above his own." Cather v. Seneca-Upshur Petroleum, Inc., Civil Action No. 1:09CV139, 2010 WL 3271965 (N.D. W. Va. Aug. 18, 2010) (citing Wellman v. Bobcat Oil & Gas, Inc., No. 3:10cv147, 2010 WL 2720748 (S.D. W. Va. July 8, 2010).

The Plaintiffs allege that the Defendants assumed a fiduciary duty by collecting rents, because a portion of these payments was dedicated to common area maintenance (Dkt. No. 19). They also point to the language in the leases stating that the lease is for the benefit of the tenants, their employees, agents, customers, licensees, and invitees. Id. at 15-16. The Plaintiffs submit that a landlord, a lender, or a loan servicer may assume fiduciary

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                               C/W  1:19CV168
                                                     1:19CV169

---

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

---

duties through a lease agreement. Tellingly, however, they cite no legal authority in support of this proposition.

The Defendants, on the other hand, point out that, in addition to the fact that Wells Fargo is not a party to the ALR, the ALR does not impose a requirement on them to act in Plaintiffs' best interest (Dkt. No. 24 at 35). They also argue that the ALR confirms that U.S. Bank owes no duty to third parties such as Arthur-Nelson or Elswick. Id.

The power of attorney language at issue grants U.S. Bank the right "to take any and all of the actions set forth in Section 3.1[5] of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property." Significantly, this power of attorney language grants U.S. Bank the right, but not the duty, to take these actions. Additionally, when

---

[5] Section 3.1 of the ALR provides, in pertinent part, that "[u]pon the occurrence of an Event of Default . . . Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties" (Dkt. No. 4-6 at 28). This section also provides that the Lender may eject the defaulted Borrower and its agents and servants from the Mall, take possession of the Property and all books, "and have, hold manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper." Id. Finally, this section provides that, following a default, the lender may complete construction on the Property, exercise all rights and powers of Borrower, require reasonable rental value for the use and occupancy of the Property, or require Borrower to surrender possession of the Property. Id. at 29.

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**            1:19CV167
                                                       C/W  1:19CV168
                                                            1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

read *in pari materia* with Section 3.1 of the ALR, this power of attorney provides U.S. Bank with an avenue to preserve its ability to collect the rents after a default by Tara.

   None of these provisions creates a fiduciary duty between the Defendants and Tara's tenants or the tenants' customers. Arthur-Nelson, Elswick, and those similarly situated are not parties to, nor are they beneficiaries of, the ALR. Instead, Arthur-Nelson is a nearby landowner and a potential customer of the Mall. The ALR did not bind U.S. Bank[6] to perform any of the covenants or duties contained in Elswick's lease with Tara. The distant relationship between Arthur-Nelson, Elswick, and the Defendants does not create a fiduciary duty under West Virginia law. Therefore, because Arthur-Nelson and Elswick failed to plead any facts that would create a legally cognizable fiduciary relationship, their complaints fail to state a claim upon which relief may be granted.

   **3.   In re Flood**

   Arthur-Nelson and Leeson also allege that the Defendants breached a duty of care under In re Flood, which stands for the proposition that adjoining landowners should act reasonably in dealing with surface water. Syl. Pt. 1, In re Flood, 216 W. Va.

_____

   [6] Wells Fargo is not a party to the ALR.

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                                  C/W  1:19CV168
                                                       1:19CV169

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

534, 607 S.E.2d 863 (2004). (Dkt. No. 4-5 at 17-18; Case No. 1:19cv169, Dkt. No. 5-5 at 24-25). According to Leeson, water backed up and flooded homes upstream from the Mall after the culvert became blocked with debris during the June 23, 2016 flood (Case. No. 1:19cv169, Dkt. No. 5-5 at 6). The culvert's collapse released the impounded water, which damaged homes downstream from the Mall. Id. Leeson's home was damaged at some point. Id. at 6-7. Arthur-Nelson claims she too suffered damages to her real and personal property because of the flood (Dkt. No. 4-5 at 15). Leeson and Arthur-Nelson contend that the Defendants' alleged failure to repair the culvert "was a cause or contributing factor to the collapse of the crossing"[7] (Dkt. No. 19 at 19).

The Defendants deny any liability under In re Flood because they did not assume any duties under the ALR. The ALR, in pertinent part, provides that "[t]he Assignment shall not be construed to bind [the Defendants] to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon [the Defendants]" (Dkt. No.

---

[7] The Plaintiffs base this allegation on expert reports submitted as part of Tara's bankruptcy case. The Court declines to consider the purported contents of these reports because they are neither attached to nor integral to the Plaintiffs' complaints. See Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

24 at 18). The ALR also did not operate "to place any obligation or liability for the control, care, management or repair of [the Mall] upon [the Defendants], nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guarantees." Id.

As the Bankruptcy Court correctly concluded, the Defendants did not step into Tara's shoes to act as the Mall's landlord. Although the tenants paid rent directly to Wells Fargo, none of the Defendants had a duty to maintain or repair the culvert, and accordingly, are not "adjoining landowners" for the purpose of establishing liability under In re Flood. The Bankruptcy Court therefore properly dismissed Leeson and Arthur-Nelson's claims for alleged damage based on flood waters caused by the culvert's failure.

**4.    Breach of General Duty of Care**

All of the Plaintiffs allege that the Defendants breached a general duty of care. They contend the Defendants owed them a duty of reasonable care "under the Servicing Standard, the Duty of Reasonable Care under the cash management agreement and the general duty of all persons." (Case. No. 1:19cv168, Dkt. No. 5-5 at 23).

Arthur-Nelson and Elswick allege that the Defendants breached a "general duty of care" when they failed to maintain the premises

22

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

of the Mall in a reasonably functional commercial condition (Dkt. No. 4-5. at 18-19; Case No. 1:19cv168, Dkt. No. 5-5 at 23-24). Leeson and Crum allege that the Defendants breached the standard of care for "persons who construct driveways over waterways and obstruct waterways." (Case No. 1:19cv169, Dkt. No. 5-5 at 24).

To assert a cause of action for negligence in West Virginia, a plaintiff must prove by a preponderance of the evidence "that the defendant owed a legal duty to the plaintiff, and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." Neely v. Belk Inc., 222 W. Va. 560, 568, 668 S.E.2d 189, 197 (2008) (quoting Strahin v. Cleavenger, 216 W. Va. 175, 603 S.E.2d 197 (2004)). The defendant must be "guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, Parsley v. General Motors Acceptance Corp., 167 W. Va. 866, 870, 280 S.E.2d 703, 706 (1981).

Duty is a flexible concept and is "not absolute, but is always relative to some circumstance of time, place, manner, or person." Syl. Pt. 1, Dicken v. Liverpool Salt & Coal Co., 41 W. Va. 511, 23 S.E. 582 (1895). A person who "engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                               C/W  1:19CV168
                                                    1:19CV169

### MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Syl. Pt. 2, Robertson v. LeMaster, 171 W. Va. 607, 301 S.E.2d 563 (1983) (citing Restatement (Second) Torts § 321 (1965)). Duty "is measured by the scope of the risk which negligent conduct foreseeably entails." Id., 171 W. Va. at 612, 301 S.E.2d at 568 (internal citation omitted). The relevant inquiry is whether an ordinary person in the defendant's position, "knowing what he knew or should have known, [would have] anticipate[d] that harm of the general nature of that suffered was likely to result?" Syl. Pt. 4, Sewell v. Gregory, 179 W. Va. 585, 588, 371 S.E.2d 82, 85 (1988). See also Bragg v. United States, 230 W. Va. 532, 538-42, 741 S.E.2d 90, 96-100 (2013) (discussing when a duty may be owed to a third party).

West Virginia law permits a negligence claim for purely economic losses when there is evidence of a "special relationship" between the plaintiff and the defendant. See Aikens v. Debow, 208 W. Va. 486, 500, 541 S.E.2d 576, 590 (2000) ("[W]here a special and narrowly defined relationship can be established between the tortfeasor and a plaintiff who was deprived of an economic benefit, the tortfeasor can be held liable."); Eastern Steel Constructors,

24

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

Inc. v. City of Salem, 209 W. Va. 392, 398, 549 S.E.2d 266, 272 (2001) ("[R]ecovery of economic damages should be allowed in certain meritorious claims when an adequate barrier against limitless liability, such as the existence of a special relationship, can be identified[.]").

Whether a defendant has a special relationship with a plaintiff such that the defendant owes a duty of care to the plaintiff is a determination that must be rendered by a court as a matter of law. Syl. Pt. 5, Aikens, 208 W. Va. at 486, 541 S.E.2d at 576.

> The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evidence from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

Eastern Steel Constructors, 209 W. Va. at 398, 549 S.E.2d at 272 (quoting Aikens, 208 W. Va. at 499, 541 S.E.2d at 589).

Here, the Plaintiffs claim a special relationship existed between them and the Defendants because they were "tenants, employees, customers of the tenants, and invitees to the premises"

25

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.           1:19CV167
                                                  C/W  1:19CV168
                                                       1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

(Dkt. No. 19 at 20-21). They also contend that the ALR gives rise
to a contractual relationship between them and the Defendants.
Id. at 21.

The Defendants counter that the Plaintiffs are not parties to
the Loan Documents (Dkt. No. 24 at 32). Raising a floodgates
argument, they cite Good v. Am. Water Works Co., Inc., No. CV 14-
1374, 2016 WL 5864432 (S.D. W. Va. Oct. 6, 2016) (Copenhaver, J.),
where the district court warned that recognizing a special
relationship between an employee and the party alleged to be partly
responsible for the closure of the employee's workplace "would
merit recovery as well for a host of others" and would
impermissibly expand liability.

The Plaintiffs' argument that a special relationship existed
between them and the Defendants is tenuous at best. The allegations
regarding their losses, that Arthur-Nelson was unable to shop at
the Mall, that Leeson can no longer live in his home, and that Crum
was stranded overnight, are not enough where, in the absence of
contractual privity, a close nexus is required. The Plaintiffs do
not have contractual privity with the Defendants; their status is
more akin to that of the general public, particularly in the cases
of Arthur-Nelson, Leeson, and Crum. As to Elswick, which had a

26

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

### MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

lease with Tara, since the Defendants did not assume any duties under that lease, Elswick cannot state a claim for negligence based on a breach of the general duty of care.

### 5.   Tortious Interference with a Business Relationship

In its amended complaint, Elswick alleges that it had a business relationship with its customers and that the Defendants knew of this relationship (Case. No. 1:19cv168, Dkt. No. 5-5 at 22-23). It claims the Defendants acted intentionally in failing to maintain access to the property, thereby proximately causing Elswick's losses. Id. at 23. According to Elswick, this failure "was a breach of the duties as set forth above." Id. It contends it lost revenue and customers, and also had to reimburse customers with remaining time on their memberships. Id.

In West Virginia, a plaintiff must prove four elements to establish a claim for tortious interference. These include: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 5, in part, Hatfield v. Health Management Associates of West Virginia, 223 W. Va. 259, 672 S.E.2d 395 (2008).

27

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.          1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

The Restatement (Second) of Torts § 766 (June 2020 Update) states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

"The essential thing is to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other." Id. at cmt. h.

The Plaintiffs argue that dismissing this claim is premature because motive—here, intent—is a question of fact (Dkt. No. 19 at 22). But, as the Defendants point out, the Plaintiffs' allegation that the Defendants intentionally denied a request for funds to repair the culvert is not sufficient to state a viable tortious interference claim in any case (Dkt. No. 24 at 37).

The Plaintiffs have maintained throughout the pendency of these cases that the Defendants acted negligently by failing to approve the funds for the culvert repair before or after the flood. But negligence is not an intentional act, and there are no plausible allegations in the complaints that the Defendants acted

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.        1:19CV167
                                            C/W  1:19CV168
                                                 1:19CV169

---

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

---

intentionally. In point of fact, even when those allegations are viewed in the light most favorable to the Plaintiffs, the Defendants' actions are more in the nature of a failure to act.

As noted by the Bankruptcy Court in another proceeding:

> By including "of," [in the phrase "intentional act of interference,"] the Hatfield court makes clear that an act that leads to interference by coincidence is insufficient. Moreover, "[d]efendants are not liable for interference that is negligent rather than intentional. . . ." Otherwise, the law would simply require "an intentional act that led to interference."

In re 201 N. George St., LLC, 551 B.R. 786, 792 (Bankr. N.D. W. Va. 2016) (citing Hatfield, 223 W. Va. at 267, 672 S.E.2d at 403) (internal citations omitted).

Elswick's allegations speak for themselves. Instead of alleging that the Defendants' actions were intended to deprive it of revenue, Elswick claims it was deprived of its customers as a consequence of the Defendants' failure to maintain access to the property. This does not plausibly allege the essential element of intent. Elswick, therefore, has failed to state a claim against the Defendants for tortious interference with a business relationship.

**6.  Duty to Customers and Invitees**

According to Crum, the Defendants breached a duty owed to customers and invitees on the shopping center premises under the

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.        1:19CV167
                                              C/W  1:19CV168
                                                   1:19CV169

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

ALR and lease provisions (Case 1:19cv169, Dkt. No. 5-5 at 23).

Those provisions require the landlord to provide reasonable access

to and use of the Mall premises to invitees and customers of the

lessees. Id. at 25. According to Crum, he "suffered the nuisance

and inconvenience of being confined to the premises of the shopping

center and the loss of his freedom of movement for the period of

time required to construct an alternative entrance and exit." (Dkt.

No. 5-5 at 27).

     As discussed earlier, however, pursuant to the ALR, the

Defendants never agreed to assume the covenants and other

obligations of the leases. Accordingly, because the Defendants owed

no duty to any customers or invitees of the Mall, Crum's negligence

claim fails as a matter of law.

**B.   The Bankruptcy Court Correctly Dismissed Elswick's Breach of
       Contract Claim.**

     Elswick's breach of contract argument rests solely on its

contention that the Defendants were in privity of contract with it

because they (or, in this case, U.S. Bank) had been assigned the

Mall's leases and rents, including Elswick's lease with Tara.

     In order to establish a breach of contract claim under West

Virginia law, a plaintiff must establish: (1) the existence of a

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.        1:19CV167
                                             C/W  1:19CV168
                                                  1:19CV169

<u>MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT</u>

valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result. <u>Kanawha-Gauley Coal & Coke Co. v. Pittson Minerals Group, Inc.</u>, No. 5:12-4609, 2011 WL 3022239, at *10 (S.D. W. Va. July 22, 2011) (citing <u>Exec. Risk, Inc. v. Charleston Area Med. Ctr. Inc.</u>, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009)).

"If a covenant or promise be made for the sole benefit of a person  with whom it is not made . . . such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only." W. Va. Code § 55-8-12. "In the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration." Syl. Pt. 2, <u>Ison v. Daniel Crisp Corp.</u>, 146 W. Va. 786, 122 S.E.2d 553 (1961).

As already noted, the Bankruptcy Court was persuaded by the district court's disposition of the plaintiff's breach of contract

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**       **1:19CV167**
                                                   **C/W  1:19CV168**
                                                        **1:19CV169**

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

claim in <u>Nidy</u>, which it found "thoughtful[,] and complete." (Dkt.
No. 4-13 at  6). In turn, the court in <u>Nidy</u> had been persuaded by
the following provision in the relevant Loan Agreement:

> This Agreement and the other Loan Documents are for the
> sole and exclusive use of Borrower and Lender and may not
> be enforced, nor relied upon, by any other Person.
> Nothing contained in this Agreement or the other Loan
> Documents shall be deemed to confer upon any Person other
> than Borrower and Lender any right to insist upon or to
> enforce the performance or observance of any of the
> terms, covenants and conditions contained herein or
> therein.

<u>Nidy</u>, 2019 WL 2537418 at *5. The district court also quoted the
Pooling and Servicing Agreement, which stated:

> [N]o Person other than a party to this Agreement, any
> Mortgage Loan Seller, any Initial Purchaser, any
> Underwriter or any Certificateholder shall have any
> rights with respect to the enforcement of any of the
> rights or obligations hereunder. Without limiting the
> foregoing, the parties to this Agreement specifically
> state that no Borrower, Manager or other party to a
> Mortgage Loan is an intended third-party beneficiary of
> this Agreement.

<u>Id.</u>

Elswick was not the sole beneficiary of, nor even a party to,
any contract with the Defendants. Nor can it demonstrate that the
Defendants assumed any duties under the relevant leases because
they specifically disclaimed those duties in the ALR. <u>See</u> Dkt. No.

32

ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.        1:19CV167
                                              C/W  1:19CV168
                                                    1:19CV169

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

24 at 18. Therefore, because no contract existed for Defendants to breach, Elswick's breach of contract claim fails.

## C. The Plaintiffs' Claims for Punitive Damages and Class Allegations are Moot.

In West Virginia, punitive damages are only available when "a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety, and welfare of others." W. Va. Code § 55-7-29(a). Punitive damages are generally not available in contract actions absent willful, wanton, malicious, or oppressive conduct by the defendant. Skiles v. Mercado, Civil Action No. 3:15-3865, 2016 WL 183921 (S.D. W. Va. Jan. 14, 2016) (internal citations omitted).

"When the case is a class action lawsuit, the named class representative 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013) (quoting Blum v. Yaretsky, 457 U.S. 991, 1001 n. 13, 102 S.Ct. 2777 (1982) (additional citations omitted)). Because the Plaintiffs' complaints fail to state any

33

**ARTHUR-NELSON, ET AL., v. US BANCORP, ET AL.**          1:19CV167
                                                     C/W  1:19CV168
                                                          1:19CV169

**MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

claim for which relief may be granted, their demands for punitive

damages and to be designated as class representatives are moot.

## V. CONCLUSION

For the reasons discussed, the Court **AFFIRMS** the Bankruptcy

Court's dismissal of the Plaintiffs' complaints, and **DISMISSES**

these cases with prejudice.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this

Memorandum Opinion and Order to counsel of record, to enter a

separate judgment order, and to strike these consolidated cases

from the Court's active docket.

DATED: September 30, 2020.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

34